## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RIGOBERTO VENTURA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-13127** |
| **DARREL VANNOY, WARDEN** | **SECTION: "M"(5)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Rigoberto Ventura, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    On November 15, 2011, he was charged by bill of indictment with aggravated rape of G.L.    On October 18, 2012, the bill was amended to include a count of sexual battery of H.W. (referred to by the time of trial as H.G.),

a victim under the age of 13.[1]    On the morning of voir dire, defense counsel sought various sanctions including severance of the counts or continuance, in response to the State's failure to provide certain discovery pertaining to the sexual battery charge.    The request was denied.    The State obtained the available evidence and turned it over to the defense, and trial proceeded as scheduled.    A jury subsequently found Ventura guilty as charged on both counts.[2]

On July 13, 2015, his motions for post-verdict judgment of acquittal and for new trial were denied, and he was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence for aggravated rape and a term of 50 years imprisonment at hard labor, with the first 25 years to be served without benefit of probation, parole or suspension of sentence for the sexual battery, to run consecutively.    His motion to reconsider the sentence was also denied.[3]

On direct appeal, he assigned as grounds for error the trial court's denial of his motion to sever the counts and alternative motion to continue the trial.    He argued that in light of evidence only recently disclosed to the defense (a Texas Office of Community Services ("OCS") file in Texas on H.G. and a statement made by H.G.'s mother in Texas), the trial court should have granted his request to sever the counts and proceed only with the aggravated

---

[1]  State Rec., Vol. 1 of 8, Bill of Indictment; Minute Entry, 10/18/12.

[2]  State Rec., Vol. 1of 8, Minute Entry, 6/24/15; *see also* Verdict of the Jury, R.p. 143.

[3]  State Rec., Vol. 1 of 8, Minute Entry, 7/13/15.

rape count, or alternatively, should have allowed a one-day continuance to allow the defense additional time to obtain the evidence relevant to the sexual battery count.    On April 15, 2016, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[4] On April 24, 2017, the Louisiana Supreme Court denied his application for writ of certiorari.[5]

On or about May 8, 2017, Ventura submitted an application for post-conviction relief to the state district court.[6]    In that application, he asserted the following claims:    (1) he was denied effective assistance of trial counsel when Ventura failed to subpoena records or to object to prejudicial remarks by the prosecutor during closing argument; (2) denial of transcripts and the right to full appellate review; (3) the prosecutor used peremptory challenges in a discriminatory manner during voir dire; (4) the State was allowed 13 peremptory challenges; (5) he was denied a fair trial due to prosecutorial misconduct during closing argument; and (6) he was denied the right to testify.    He also filed a motion for production of documents requesting a free copy of the record.    On May 22, 2017, the state district court denied the motion and his application for post-conviction relief.[7]    The district court explained that the claims and factual allegations raised on his behalf by inmate

---

[4]    *State v. Ventura*, 2015-KA-1784 (La. App. 1st Cir. 4/15/16), 195 So.3d 66; State Rec., Vol. 6 of 8.

[5]    *State v. Ventura*, 2016-KO-0945 (La. 4/24/17), 221 So.3d 67; State Rec., Vol. 5 of 8.

[6]    State Rec., Vol. 6 of 8, Uniform Application for Post-Conviction Relief.

[7]    State Rec., Vol. 6 of 8, State District Court Order, 5/22/17.

substitute counsel inexplicably mirrored those in a different Angola inmate's entirely unrelated application for post-conviction relief submitted about the same time to the same division of court.    In denying relief, the district court explained that "providing a laundry list of claims that might apply in some case, to some defendant, as a result of some trial, does not satisfy the requirement of 'particularized need' necessary to grant Defendant the relief he seeks."[8]

On August 7, 2017, Ventura's related supervisory writ application was denied by the Louisiana First Circuit Court of Appeal.[9]    The court of appeal doubted the veracity of the allegations for the reasons set forth by the state district court.    The appellate court reasoned:

> Pursuant to article 926(C) of the Code of Criminal Procedure, a petitioner is required to provide an affidavit that the allegations contained in the petition are true to the best of his information and belief.    This court is under the impression that the allegations in one or both of the applications for postconviction relief appear to be false.

The court of appeal rejected Ventura's application pursuant to Louisiana Code of Criminal Procedure article 926(E), which provides that inexcusable failure to comply with the provisions of article 926 may be a basis for dismissal.    The court's ruling also specifically reserved for him the opportunity to file a new application for post-conviction relief in the

---

[8]  State Rec., Vol. 6 of 8, PCR Order, p. 3.

[9]  State Rec., Vol. 6 of 8, *State v. Ventura*, 2017-KW-0838, 2017 WL 3381051 (La. App. 1st Cir. Aug. 7, 2017).

state district court raising claims tailored specifically to his own case and to seek supervisory writs from any adverse ruling with no bar imposed for repetitiveness or successiveness. Ventura however did not pursue a new application for post-conviction relief.    Instead, he filed a related supervisory writ application with the Louisiana Supreme Court.    On November 5, 2018, the Louisiana Supreme Court issued a one-word denial.[10]

Ventura subsequently filed his federal application for habeas corpus relief asserting six claims for relief:    (1) the trial court erred in denying his motion to sever the counts, or in the alternative, denying his motion to continue; (2) trial counsel was constitutionally ineffective for failing to subpoena G.L.'s counseling records; (3) he was denied the right to transcripts and full appellate review; (4) the prosecutor used peremptory challenges in a discriminatory manner; (5) prosecutorial misconduct during closing argument denied him a fair trial; and (6) he was denied the right to testify.[11]    The State's response concedes that the federal application is timely and that his claims were exhausted in the state courts.[12]    As to claims two through six, specifically, the State argues that they should be rejected as

---

[10] *State ex rel. Ventura v. State*, 2017-KH-1458 (La. 11/5/18), 256 So.3d 277; State Rec., Vol. 8 of 8.    He also filed a motion to stay the Louisiana Supreme Court proceedings pending a ruling on his purported application for rehearing with the Louisiana First Circuit. However, the direct-appeal opinion does not reflect that a rehearing was ever requested or considered, and no application for rehearing filed by or on behalf of petitioner appears in the state court record.

[11] Rec. Docs. 1, 5, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[12] Rec. Doc. 10, p. 8.

procedurally defaulted or alternatively denied on the merits.     Ventura filed a reply contesting the State's procedural default argument and reasserting the merit of his claims for relief.[13]

## Facts

On direct appeal, the Louisiana First Circuit briefly summarized the facts:

At trial, nineteen-year-old G.L. testified that when he was between the ages of six and ten years old, the defendant sexually abused him approximately fifteen times. Specifically, G.L. and the defendant performed oral sex on each other. The abuse took place at G.L.'s grandmother's house in Slidell. G.L. disclosed the abuse years later during counseling.

After learning of G.L.'s accusations against the defendant, H.G.'s mother questioned her children about whether anything had happened to them. H.G.'s mother was divorced from H.G.'s father, the defendant's brother, but the children, who lived with their mother in Texas, visited with their father and saw the defendant during the summers. H.G. disclosed that the defendant had inappropriately touched her during one of those visits. At trial, twelve-year old H.G. testified that the defendant touched her vagina on two occasions while she visited his home in Bush, during the summer of 2011.[14]

## Preliminary Review-Procedural Default

As a preliminary matter, the Court considers the State's assertion that claims two through six, which Ventura raised on collateral review, were denied as procedurally barred under state law by the state courts and thus procedurally defaulted on federal review.     The State relies on the Louisiana First Circuit's writ denial pursuant to Louisiana Code of Criminal

---

[13]  Rec. Doc. 11.

[14]  *State v. Ventura*, 195 So.3d at 68.

Procedure articles 926(C) and 926(E).    Article 926 sets forth pleading requirements for an application for post-conviction relief.    Subsection C provides that the application must be signed by the petitioner and be accompanied by his affidavit that the allegations contained in the petition are true to the best of his information and belief.    Ventura's application contained the verification statement; however, the appellate court denied relief based upon its impression that under the circumstances the allegations in his application appeared to be false, contrary to the verification.    The appellate court thus summarily denied relief pursuant to subsection E, which permits dismissal for inexcusable failure of the petitioner to comply with the provisions of article 926.    The Louisiana Supreme Court denied relief without explanation.

Under the procedural-default doctrine, federal courts are precluded from considering claims on federal habeas review where the last state court to consider the claims based its denial of relief on an independent and adequate state-law procedural ground.    *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).    To satisfy the "independent" and "adequate" requirements, the state court's dismissal must clearly and expressly reflect that it rests on a state procedural bar, and the bar must be strictly or regularly applied by state courts to the vast majority of similar claims.    *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001).

With little discussion or citation of authority, the State relies on the last reasoned decision by the Louisiana First Circuit and argues generally, without reference to any specific subsection, that Louisiana Code of Criminal Procedure article 926 is "presumptively

independent and adequate."[15]    In his traverse, Ventura emphasizes a discrepancy in the dismissal for failing to comply with Louisiana Code of Criminal Procedure article 926 (C) ("[t]he application shall be signed by the petitioner and accompanied by his affidavit that the allegations contained in the petition are true to the best of his information and belief"), a requirement with which he did technically comply even if the appellate court disputed the veracity of the allegations made on his behalf by inmate counsel substitute.[16]    This Court's independent review found no similar application of the rule in this context by Louisiana courts as its usual practice to support a conclusion that the rule was firmly established and regularly followed.    *Walker v. Martin*, 562 U.S. 307, 316 (2011).    Thus, considering Ventura's traverse, which the Court broadly construes as opposing the presumptively adequate nature of the state procedural bar imposed, and the absence of a well-supported, compelling argument by the State in favor of procedural default, the Court finds insufficient grounds exist for refusing to reach the merits of five federal claims for relief presented by Ventura on federal habeas review.    The Court turns now to the State's alternative argument for denial of the claims on the merits.

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure

---

[15]  Rec. Doc. 10, p. 9.

[16]  Rec. Doc. 11, pp. 2-3.

questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v.*

*Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts.    28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597

(5th Cir. 2003).    For claims that were not considered on the merits in the state courts, the pre-AEDPA standard of review applies.    *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

## Claims for Relief[17]

### A.    *Denial of Severance or Continuance*

Ventura claims that the trial court improperly denied his motion to sever the counts against him or alternatively continue the trial based on the State's belated disclosures of evidence pertaining to the sexual-battery offense.    He also alleges that joinder of the count involving H.G. amounted to impermissible "other crimes" evidence that served only to bolster G.L's story and made it difficult for him to present separate defenses to each count. In rejecting the severance claim on direct appeal, the Louisiana First Circuit reasoned:

> Prior to the start of the defendant's Monday trial, the defense made an oral motion for discovery sanctions, seeking to exclude any information learned from any investigation of the sexual battery of H.G. that was conducted in Texas, the state where H.G. was living at the time she disclosed the abuse. The defense contended that it was only on the previous Friday that the state provided it with a Texas police report that referenced statements by H.G.'s mother and a Texas Office of Community Services (OCS) case file on H.G. The defense asked that any information obtained in Texas be excluded based on the state's late disclosure of the evidence.

---

[17]    The Court will apply a deferential standard of review to the claims reviewed on the merits by the state courts on direct appeal, but a *de novo* standard of review to those claims raised on post-conviction review to the extent the claims were not considered on the merits.    *Lefevre v. Cain*, 586 F.3d 349, 353 (5th Cir. 2009).

The state opposed the motion, arguing that it provided the defense with open file discovery, that the defense had only requested the Texas police report a week prior to trial, and that the state obtained the report on Friday and promptly turned it over to the defense. The state further argued that the forensic interview of H.G. that was conducted in Texas had been turned over to the defense as part of open file discovery. The state contended that it was unaware of any Texas OCS records prior to receiving the police report, therefore none had been sought or located.

The defense, the state, and the trial court then engaged in a discussion about the appropriate course of action. The defense again asked that the state not be allowed to use the evidence, and in the event that was not satisfactory to the trial court, asked that it consider severing the counts "so that the Texas count has no bearing on the Louisiana count." And if that was not satisfactory, the defense requested a one-day delay of the trial. When the trial court asked the reason for the proposed delay, the defense answered that it was to "assimilate the newfound information into [their] case," and indicated that during that time they may be able to obtain H.G.'s mother's recorded statement.

Considering the assertions of the defense and state, the trial court denied the request for sanctions, as well as the request for severance. The trial court indicated that they would only be conducting voir dire that day, and on the following day they would see whether the evidence had been obtained. The trial court stated it was effectively granting a recess of one day, but was denying the motion to continue the trial. Later that day, the state informed the court that it had obtained the statement made by H.G.'s mother and was in the process of providing it to the defense. The state also stated it had confirmed that Texas OCS had only "taken down a referral and sent the information to Louisiana" and that Louisiana's OCS had no complaints or investigations on file. The defense then indicated it was satisfied with the discovery.

Now, on appeal, the defendant asserts that the trial court erred denying the motion to sever, arguing that he was forced to go to trial without evidence that may have been exculpatory and may have aided him in impeaching witnesses or undermining the credibility of H.G.'s testimony. However, at trial, the state indicated it provided the defense with the statement by H.G.'s mother, and the defense indicated that it was satisfied with the discovery provided. The defendant further complains about a missing OCS file, but that issue was also resolved at trial, with the state confirming that there was no Texas OCS file,

> and the defendant indicating it was satisfied with the discovery provided. The trial court did not abuse its discretion in denying the motion to sever based on these evidentiary issues. *Cf. State v. Allen*, 95–1515 (La. App. 1 Cir. 6/28/96), 677 So.2d 709, 713, *writ denied*, 97–0025 (La. 10/3/97), 701 So.2d 192 (a motion for severance is addressed to the sound discretion of the trial court and its ruling should not be disturbed on appeal absent a showing of an abuse of discretion).[18]

Additionally, on the severance claim, the court of appeal refused to consider whether the separate offenses were improperly joined because that claim was not preserved for review by contemporaneous objection at trial pursuant to Louisiana Code of Criminal Procedure article 841(A).

The court of appeal also rejected his argument that the trial court improperly denied him a continuance.    In denying the alternate claim for relief, the court reasoned:

> Alternatively, the defendant contends that he should have been granted a one-day continuance to obtain the OCS file and the statement of H.G.'s mother.[19] We reiterate that the record reflects that the statement was provided, the defense was informed that there was no OCS file, and the defense thereafter indicated it was satisfied with the discovery provided. Further, as the trial court noted, the trial's presentation of evidence did not begin until the day after the motion was made. And when trial began the next day, the defendant did not urge any further objection. Accordingly, the trial court did not abuse its discretion in denying the motion to continue. *Cf. State v. Strickland*, 94–

---

[18]    *State v. Ventura*, 195 So.3d at 68-69.

[19]    We recognize that the motion to continue was neither made in writing, nor filed at least seven days prior to the commencement of trial as required by Louisiana Code of Criminal Procedure article 707. However, an exception to that requirement has been recognized when the grounds alleged for the continuance arose unexpectedly such that the defense does not have an opportunity to prepare the written motion, and where the record reflects that the trial judge was aware of the ground upon which the motion was based and ruled thereon. *See State v. Simpson*, 403 So.2d 1214, 1215 n. 2 (La.1981); *State v. Brown*, 95–0755 (La. App. 1 Cir. 6/28/96), 677 So.2d 1057, 1062.

> 0025 (La. 11/1/96), 683 So.2d 218, 229 ("The decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge and a reviewing court will not disturb such a determination absent a clear abuse of discretion.").[20]

The Louisiana Supreme Court subsequently denied relief without additional stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

To the extent Ventura argues that the trial court erred as a matter of state law in denying the severance, he has failed to state a cognizable federal claim.    A federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.    *Swarthout v. Cooke*, 562 U.S. 216 (2011) (federal habeas review does not lie for mere errors of state law); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) and *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)).    "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."    *Estelle*, 502 U.S. at 67-68, 112 S.Ct. 475; *see also*, *Molo v. Johnson*, 207 F.3d 773, 776 n. 9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (1997) (a disagreement as to state law is not cognizable on federal habeas review).    Here, the court

---

[20]   *State v. Ventura*, 195 So.3d at 69-70 (footnote in original).

of appeal addressed the state-law issue in the context raised by Ventura at trial, *i.e.*, the discretionary decision to afford severance or continuance for late discovery of evidence pertaining to one count).    The state courts' application and interpretation of Louisiana law with respect to severing offenses or denying a continuance, even if erroneous, would not constitute grounds for federal habeas corpus relief.

On the other hand, federal habeas courts may address violations of constitutional magnitude, such as due process violations that render the criminal proceedings fundamentally unfair.    *See, e.g.*, *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37, 62 S.Ct. 280, 86 L.Ed. 166 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right). Liberally construing Ventura's challenges to the denial of his request for a severance or continuance as a due process argument, presents a mixed question of law and fact for this Court.    *Manning v. Warden, Louisiana St. Penitentiary*, 786 F.2d 710, 711-12 (5th Cir. 1986) (failure of state court to sever counts presents a due process question of fundamental fairness on habeas review) (citing *Tifford v. Wainwright*, 588 F.2d 954, 957 (5th Cir. 1979)); *Skillern v. Estelle*, 720 F.2d 839, 850 (5th Cir. 1983) ("When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process.").    This Court must therefore determine if the

state courts' determination was either contrary to or involved an unreasonable application of federal law as determined by United States Supreme Court precedent.

On the morning of jury selection, the defense alleged that the late discovery of evidence pertaining to the incident involving H.G. prejudiced the defense of the case.[21]    The information gleaned came from a newly-produced police report concerning an investigation in Texas that referred to recorded statements made by H.G.'s mother to police and an OCS file generated in Texas.    The defense had access to neither and sought to obtain the recorded statement and the OCS file.    The State explained that the open file discovery provided to the defense pertaining to that count included the St. Tammany Parish Sheriff's Office report and a forensic interview with the child at the Child Advocacy Center in Texas. The State noted that it had produced the police report from Texas as soon as the defense requested it and also agreed to obtain the two additional items sought by the defense.

Under the circumstances, defense counsel asked the trial court to take one of three proposed courses of action in the following order of preference:    (1) court-imposed discovery sanctions prohibiting the State from relying on the evidence at trial; or (2) severance of the counts and proceeding only with one count of aggravated rape; or (3) a one-day continuance of trial to allow the defense to assimilate the information.[22]    In ruling on the requests, the trial court considered the fact that the State planned to obtain the requested

---

[21]    State Rec., Vol. 2 of 8, Trial Transcript (6/22/15), p. 4.

[22]    State Rec., Vol. 2 of 8, Trial Transcript, p. 7.

information for the defense immediately and denied each request.[23]    The trial court granted, in effect, "a recess of one day but for the fact that this afternoon we will be engaged in jury selection."[24]    The trial court noted the defense's objection to the rulings for the record.

Later the same day, the trial court had a follow-up discussion with counsel of record and confirmed that the defense's discovery request had been satisfied.    The prosecutor informed the court that he had obtained the recorded statement and that would be provided to defense counsel, but that there was no OCS investigation file on record in Texas for the victim.[25]

The Louisiana First Circuit rejected on direct appeal Ventura's argument that he was forced to go to trial without evidence that may have been exculpatory or that could have helped him impeach witnesses at trial or undermine H.G.'s credibility.    Contrary to his suggestions, the appellate court found that the defense's discovery request was, in fact, satisfied.    The appellate court concluded that the trial court had not abused its discretion in denying the motion to sever counts or continue trial based on the evidentiary issues.[26]

---

[23]    State Rec., Vol. 2 of 8, Trial Transcript, pp. 9-10.

[24]    State Rec., Vol. 2 of 8, Trial Transcript, pp. 10-11.

[25]    State Rec., Vol. 2 of 8, Trial Transcript, pp. 17-19.

[26]    To the extent he included other factual arguments for the first time on appeal concerning misjoinder of offenses, the court of appeal did not consider them because no objections were made at trial on those grounds.    The record confirms this was not an issue either pretrial or at trial.    He has never suggested that trial counsel was ineffective for

Ventura has not shown that the state court's determination as to severance was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.    The defense's discovery request was satisfied fully and promptly, thereby affording the defense ample time to review and incorporate the evidence into its case.    He has not demonstrated that he suffered any prejudice from going forward on the sexual battery count and the record does not establish that an error in the state court's ruling denying the motion to sever rendered his trial fundamentally unfair.

As to Ventura's claim that his rights were violated when the trial court denied his motion for a one-day continuance of trial, he must demonstrate an abuse of discretion so arbitrary and fundamentally unfair that it violates constitutional principles of due process. To do so, a petitioner must show "a reasonable probability that the granting of a continuance would have permitted him to adduce evidence that would have altered the verdict." *McFadden v. Cabana*, 851 F.2d 784, 788 (5th Cir. 1988) (quoting *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985)).    Ventura has not done so.

Here, defense counsel proposed a one-day continuance to obtain the discovery requested and assimilate the information into the defense's case.    The investigation revealed that a Texas OCS file did not exist.    The State had nothing to turn over with respect

---

failing to challenge the indictment or to move for severance on those grounds.    This Court's analysis is likewise limited to the grounds for the motions given in the context presented at trial.

to that discovery request.    Furthermore, the recorded statement that did exist was obtained quickly and given to the defense.    Defense counsel had ample opportunity to review the statement in advance of the presentation of evidence, and more specifically, the witness' testimony. [27]    There is nothing in the record to suggest that any further investigation or discovery was needed or that he was prejudiced in any way by the denial of the one-day continuance.    In fact, to the contrary, the defense indicated that discovery was satisfied.

Accordingly, Ventura has not shown that the state courts' adjudication of the claim was either contrary to or involved an unreasonable application of federal law, as determined by the United States Supreme Court.    He is not entitled to relief on this claim.

B.    *Ineffective Assistance of Counsel*

Ventura asserts that trial counsel was constitutionally ineffective because he failed to subpoena records from G.L.'s counseling sessions at a rehabilitation center where the allegations of inappropriate sexual conduct first surfaced.    He concedes that the "record appears to support that GL had been in counseling sessions due to the physical abuse by his grandmother,"[28]  but theorizes that the records could show G.L. was ordered by a court to attend counseling, and thus perhaps he had a reason to lie about the sexual abuse so that he

---

[27]  State Rec., Vol. 3 of 8, Trial Transcript (Gray Cross-Examination, 6/23/15) pp. 28-38.

[28]  Rec. Doc. 1, 5, p. 30.

could get released from the rehabilitation center.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v.*

*Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.    In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."    *Crockett*, 796 F.2d at 793.

With respect to an attorney's duty to investigate, the controlling law provides:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. at 690-91).    Furthermore, in order to establish a failure to investigate on the part of counsel, a petitioner must allege "with specificity what the investigation would have

revealed and how it would have altered the outcome of the trial." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).    He must provide factual support demonstrating what exculpatory evidence further investigation would have revealed.    *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, Civ. Action No. 07–6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).    A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.    *Diaz v. Quarterman*, 239 F. Appx. 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696).    For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice.    *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Based on the thorough discovery and investigation conducted by defense counsel, he was aware of the disclosures made by G.L. during the substance-abuse counseling sessions. Defense counsel filed a "rule to show cause why records should not be provided for *in camera* review by the court."[29]    The records custodian or authorized representative of the facility was ordered to appear and show cause why it should not provide the entire records and file

---

[29]    State Rec., Vol. 1 of 8, R.p. 96, "Rule to show cause why records should not be provided for in camera review by the court" with Order signed October 21, 2014.

of G.L. for *in camera* review.    On the first day of trial, however, defense counsel chose not to pursue that motion, declaring instead that the discovery request was satisfied because the State had been unable to locate the records.[30]    Thereafter, counsel was able to use the unknown circumstances surrounding the sessions to instill doubt in jurors' minds as to G.L.'s actual motivation for disclosing the sexual abuse.    Defense counsel elicited testimony on cross-examination from investigator, Brian Brown, about the dearth of details surrounding G.L's disclosures and emphasized that point in his closing argument.[31]    A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."    *Strickland*, 466 U.S. at 689.

Furthermore, Ventura has offered nothing but broad and purely speculative assertions that first, the records would reveal any type of court-ordered, mandated rehabilitation for G.L., and second, that being required to attend rehabilitation would prove he had reason to fabricate the entire sexual abuse scenario.    His allegation that further investigation would have produced information relevant to the defense is entirely unsupported and speculative.    Ventura plainly has not met his burden of proof.

---

[30]    State Rec., Vol. 2 of 8, Trial Transcript, p. 23.

[31]    State Rec., Vol. 3 of 8, Trial Transcript, 6/23/15, pp. 79-80 and Trial Transcript, 6/24/15 (Closing), pp. 27-28.

For these reasons, Ventura's conclusory assertion that additional investigation and subpoenaing these records would have produced evidence showing G.L. was lying falls short of demonstrating deficient performance or prejudice under *Strickland*.    He is not entitled to relief on this claim.

C.  *Denial of Right to Appellate Review/Complete Transcript*

Ventura claims that he was denied appellate review in violation of due process because he was not provided a copy of the record.    He does not claim that the record was inadequate to resolve the claims asserted on his behalf by appellate counsel.    He complains that he was unable to obtain his own personal copy of the record for the appellate proceedings.

Regarding the constitutional right to trial transcripts for appellate review, the United States Fifth Circuit has explained:

> In *Griffin v. Illinois*, 351 U.S. 12, 19–20, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that the Due Process and Equal Protection clauses of the Fourteenth Amendment require that states provide indigent defendants with a trial transcript free of charge when it is necessary for meaningful appellate review.    However, the state is not "obligated to automatically supply a complete verbatim transcript," *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal." *Draper v. Washington*, 372 U.S. 487, 495, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). "[N]or is the state required to furnish complete transcripts so that the defendants ... may conduct 'fishing expeditions' to seek out possible errors at trial." *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir. 1982).

*Kunkle v. Dretke*, 352 F.3d 980, 985-86 (5th Cir. 2003).    When Ventura requested a copy of the trial transcript, he was represented by appointed counsel on direct appeal.    His counsel

was provided a copy of the trial transcript and filed an appellate brief on his behalf.    The brief filed by counsel reflects extensive citation to the trial-court record. [32]    Inmate substitute counsel sent a letter to the court of appeal on Ventura's behalf asking to borrow the record on appeal so that Ventura could prepare a *pro se* supplemental appellate brief.[33] He claims he did not receive a copy of the trial transcript on appeal and did not file a supplemental *pro se* brief.

Similar claims have been rejected by federal habeas courts where a petitioner asserted he was entitled to a copy of the transcript for purposes of preparing a *pro se* appellate brief even though he was represented by counsel.    *See*, *e.g.*, *Pamilton v. Warden, Avoyelles Correctional Center*, 11-cv-1433, 2014 WL 4629669, at *9-10 (W.D. La. Sept. 15, 2014) (citing *Rosado v. Unger*, 2012 WL 5871607, at *9-10 (S.D.N.Y. May 4, 2012), *report and recommendation adopted*, 2012 WL 5871606 (S.D.N.Y. Nov. 20, 2012) ("*Griffin* did not entitle Petitioner to an additional copy of the transcript [for purposes of preparing a *pro se* supplemental brief] when it was available to Petitioner's assigned counsel")).    Here, a copy of the trial record was provided and made available to Ventura through his appointed counsel.    He received meaningful appellate review through briefing by appointed counsel, who raised two well-supported arguments on his behalf.    Furthermore, he has not shown

---

[32]    State Rec., Vol. 4 of 8, Appellant's Brief.

[33]    State Rec., Vol. 4 of 8, Correspondence dated January 27, 2016. By this time, he was already well past the briefing deadlines. (*See* November 18, 2015 Notice of Lodging with briefing schedule).

that he ever requested a copy of the record from counsel or that such a request, if made, was refused.

Additionally, there is no general due-process right of access to state-court records on collateral review in criminal proceedings.    *See*, *e.g.*, *United States v. MacCollom*, 426 U.S. 317, 323-24 (1976) (no constitutional right to transcripts on collateral review of a conviction; a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts); *Deem v. Devasto*, 140 F. Appx. 574, 575 (5th Cir. 2005); *Cook v. Cain*, 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015).    An indigent defendant does not have an absolute right under federal law to a copy of trial transcripts or other record documents in connection with post-conviction or other collateral review proceedings.    *See Yates v. Collins*, 988 F.2d 1210, 1993 WL 82111 (5th Cir. 1993) (indigent defendant not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim) (citing *Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973) (affirming the lower court's finding that there was no constitutional violation where the petitioner's attorney had access to the state-court record and trial transcripts on direct appeal and where "the petitioner did not need a transcript in order to establish his contention that he was denied effective counsel at his state trial")).    As the state courts noted, Ventura's claims were not based on credible factual allegations and hardly demonstrated particularized need for transcripts.    He is not

entitled to relief on this claim.

D.  *Discriminatory Use of Peremptory Challenges*

This claim is based on Ventura's assertion that "he was quite certain that the prosecution had intentionally struck both African-American and persons of ethnic Spanish heritage."    He alleges that "to the best of his memory, the prosecutor intentionally peremptorily challenged everyone that was not Caucasian."[34]

The Supreme Court has held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause.    *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).    In evaluating whether a petitioner has established a *Batson* violation, a three-step analysis is employed, with the first step requiring a petitioner to make a *prima facie* showing that a peremptory challenge has been exercised on the basis of race.    *Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010).    Ventura has not demonstrated even a *prima facie* case of racial discrimination.

The minute entry for voir dire proceedings reflects that the prosecution exercised only six peremptory challenges, including two during the first panel of prospective jurors and four during the second panel.[35]    Although Ventura alleges that the State "intentionally struck both African-American[s] and persons of ethnic Spanish heritage," he provides no evidence to support his conclusory allegation that the State misused its peremptory strikes

---

[34]  Rec. Docs. 1, 5, p. 32.

[35]  State Rec., Vol. 1 of 8, Minute Entry, 6/22/15.

in such a manner.    Moreover, a review of the transcript of voir dire proceedings, which he claims he had no access to, offers no objective support for his claims.[36]    The transcript shows that no *Batson* objection was ever made by the defense.    And no claim of ineffective assistance for failure to object under *Batson* was ever alleged.    *See Turner v. Epps*, Civ. Action No. 07-77, 2010 WL 653880, at *7 (N.D. Miss. Feb. 19, 2010) ("As Petitioner cannot establish that any minority venire person was struck by the State, much less that they were struck with a discriminatory intent, he cannot establish ineffective assistance of counsel on this conclusory argument"); *Bell v. Director, TDCJ-CID*, Civ. Action No. 03-36, 2005 WL 2977771, at *6 (E.D. Tex. Nov. 2, 2005)(citations omitted) (Petitioner's claim that a juror was improperly struck "is a conclusory allegation ... insufficient to support a petition for a writ of habeas corpus.").    Accordingly, Ventura has not shown that he is entitled to federal habeas corpus relief on this claim.

### E.  Prosecutorial Misconduct

Ventura claims that the prosecutor made improper remarks during closing argument that denied him a fair trial.   He alleges that he "isn't quite certain of the events that had taken place during the Closing Argument. However, he does remember that it appeared as though the prosecutor had resorted to 'name calling' and pointing at Mr. Ventura."[37]

A prosecutor's comment does not present a claim of constitutional magnitude in a

---

[36]  State Rec., Vol. 2 of 3, Voir Dire Transcript, pp. 24-219.

[37]  Rec. Docs. 1, 5, p. 14.

federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and quotations omitted); *accord Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. *Greer v. Miller*, 483 U.S. 756, 765–66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985). Ultimately, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In his memorandum in support, Mr. Ventura alleges that through his "limited knowledge of the English language, the 'body language' of the prosecutor has led him to believe that 'name calling' had taken place." He also suggests that "the prosecutor knew that he could not understand the discussion during these proceedings, and took advantage of that fact."[38] However, contrary to his allegations, the record shows that he was provided with a Spanish interpreter throughout the trial proceedings, which would have given him at least a basic understanding of the prosecutor's actual closing remarks for this claim rather

---

[38] State Rec. Docs. 1, 5, p. 14.

than relying on allegations based upon his personal subjective impressions from body language.    The proper focus here remains the actual remarks made by the prosecutor. The Court has reviewed the closing argument transcripts, including rebuttal by the State, and found only one suggestive comment to which the defense objected.    At the end of rebuttal argument, the State remarked:

> Ladies and Gentleman, if you remember only one thing in your deliberations, after you've heard the evidence in this case and you've heard the accounts of those victims and the evidence that they gave from the witness stand, do you want Rigoberto Ventura as your next door neighbor?[39]

Defense counsel objected without explanation.    The trial court sustained defense counsel's objection.    Defense counsel also requested that the jury be instructed to disregard the prosecutor's comment, and the trial court did so.[40]

Arguably, the comment was phrased in a manner which asked jurors independently to consider and weigh the evidence presented at trial in the context of the question posed. However, even if the remark could be considered improper, it was brief and isolated. Moreover, jurors were told to disregard the objectionable comment.    The comment also came at the very end of closing argument, which was followed immediately with specific instructions to jurors that they must determine the facts only from the testimony and the evidence admitted during trial.    Jurors were specifically instructed that opening

---

[39] State Rec., Vol. 3 of 8, Trial Transcript, 6/24/15, p. 47.

[40] *Id*. at 48.

statements and closing arguments made by the attorneys are not to be considered as evidence.[41]    Absent extraordinary circumstances, jurors are presumed to follow the instructions given them by the court.    *See Greer v. Miller*, 483 U.S. at 766 n. 8.    Viewed in the proper context of the entire trial, the comment was not so inflammatory as to deprive Ventura of a fair trial.    *Darden*, 477 U.S. at 180-182.    He is not entitled to relief on this claim.

F.   *Denial of Right to Testify*

Finally, Ventura claims that he was denied the right to testify at trial.    He states that he does not recall if he had a colloquy with the trial court to determine whether he wanted to testify.    He does not allege that counsel failed to discuss the issue with him or refused to allow him to testify.    The record itself is silent concerning the decision.[42]    Other than his entirely conclusory allegation that he was denied the right to testify, Ventura does not specifically assert, much less support, any claim that either the trial court or counsel prevented him from testifying.    On the record and limited allegations presented, Ventura has not satisfactorily alleged or proven that he was denied his constitutional right to testify on his own behalf.    *See*, *e.g.*, *Reed v. Cain*, Civ. Action No. 13-0037, 2014 WL 2050613, at *9-

---

[41]   State Rec., Vol. 3 of 8, pp. 50-52.

[42]   State Rec., Vol. 3 of 8, Trial Transcript (6/24/15), pp. 6, 15 (Defense rests); *see also* Trial Transcript (Defense closing argument), p. 37.    Defense counsel perhaps implied the reasoning behind Ventura not testifying and his belief that he would place himself at a "bad disadvantage," because Ventura does not speak English and would have to speak through an interpreter.

10 (W.D. La. May 16, 2014); *Turcios v. Dretke*, Civ. Action No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)).

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Ventura's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[43]

New Orleans, Louisiana, this ___23rd___ day of _____May_____, 2019.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[43] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.